IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIMOTHY LEE CREED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:06CV397 |
| | ) | |
| DAN WILSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court for a ruling on pending non-dispositive and dispositive motions. These motions include (1) Plaintiff Creed's motion to compel production of documents (Docket No. 49); (2) Plaintiff's motion for leave to file an amended complaint (Docket No. 53); and (3) Defendant Wilson's motion for summary judgment (Docket No. 56). This litigation has a long history, dating back to its filing by *pro se* Plaintiff Creed on April 28, 2006. Over the multi-year pendency of the action, the Court has ruled on several motions for leave to amend by Plaintiff Creed (Docket Nos. 9, 25, 26, 31), as well as discovery motions filed by Plaintiff. (Docket Nos. 33, 38.) By its Order of March 25, 2008, the Court defined Plaintiff's primary claim against Defendant Wilson, the sole remaining Defendant, as follows: "Plaintiff alleges that Defendant Wilson violated his

constitutional rights by giving false testimony to the grand jury, leading to felony indictments against Plaintiff." (Docket No. 43, Order at 9.)

Turning first to Plaintiff's request for a further pleading amendment, including the addition of another Defendant, the Court **DENIES** the motion. (Docket No. 53.) This case is in its end-stage after a lengthy and complicated course. A summary judgment motion has already been fled by Defendant Wilson and responded to by Plaintiff. The motion to amend is denied on the basis of delay. Further, Defendant would be prejudiced by the further delay that would result from adding another Defendant at this late stage. To the extent that Plaintiff believes (as he suggests in argument) that newly discovered evidence is relevant to his pending claim against Defendant Wilson, use of that evidence in relation to Defendant's summary judgment motion is, of course, not precluded by this ruling.

With Plaintiff's claims in this action against Defendant Wilson described by Plaintiff's initial pleadings (i.e., Docket Nos. 1 and 9, Complaint and the Amended/Supplemental Complaint), the Court will review Defendant's summary judgment motion, filed June 12, 2008. (Docket No. 56.) Plaintiff has filed a response, a brief, and an affidavit in opposition to the motion, and Defendant has filed a reply. (Docket Nos. 61-64.)

The broadest reading of Plaintiff's *pro se* claims against Defendant Wilson is that Dan Wilson, as a detective with the Aberdeen police department, acted without probable cause in securing five warrants against Plaintiff in August 1999, and later gave false testimony to a grand jury, resulting in felony indictments and superseding indictments against Plaintiff.

His primary claim at this time is that Defendant Wilson committed perjury before the grand jury. Each of the original warrants against Plaintiff was issued by a district court magistrate, on application by Detective Wilson, and charged Plaintiff with obtaining property by false pretenses. The warrants recited that Timothy Lee Creed, on August 6, 1999, obtained "goods from Wal Mart . . . and cash" by means of a false pretense in that "the defendant passed check number . . . for $ . . . to the Walmart Super Center on a closed account." (Docket No. 57, Affidavit of Dan Wilson ("Wilson Aff."), Ex. G.) Plaintiff further alleges that Defendant Wilson gave false testimony to a grand jury, which resulted in indictments and superseding indictments being issued on these charges. The indictments were eventually dismissed in 2004 by a Superior Court judge on grounds that the State had caused unreasonable delay in bringing Timothy Creed to trial on the false pretense charges. (Docket No. 9, Attachments.)

In moving for summary judgment, Defendant Wilson relies upon his affidavit and exhibits. In his affidavit, Defendant states that he is now a lieutenant with the Aberdeen police department and was a detective in August of 1999. He avers that on August 16, 1999, he was contacted by Patricia Sizemore who was acting as a representative of Walmart. Ms. Sizemore informed Detective Wilson that Timothy Lee Creed had written four checks to Walmart on August 6 which did not clear his account at BB&T. She told Detective Wilson that the checks were returned because they were issued against a closed account. Copies of the checks show that each is marked on the back, "CLOSED ACCOUNT." (Wilson Aff.,

-3-

Ex. A). A fifth returned check to Walmart, dated August 6, 1999, came to Defendant's attention on August 20, 1999. (*Id*., Ex. B.)

Reviewing the checks and the associated Walmart receipts (*Id*., Ex. C), Defendant learned that Plaintiff Creed had written multiple checks to Walmart at different times during the late night and early morning of August 6. The Walmart receipts reveal that, with each check, Plaintiff purchased one or two small items, but wrote the check in a larger amount so that cash would be returned to him. The total amount of the five checks was $238.28, and $85.00 in cash was received by Plaintiff.

According to Detective Wilson's affidavit, when he first asked Plaintiff Creed about the checks, Plaintiff stated that someone had stolen checks from him and that when he found out that checks had been stolen, he closed the account. Subsequently, Plaintiff told Detective Wilson that his bookkeeper had stolen money from the account. Defendant has attached a copy of his "Interview Sheet" with Plaintiff. The Interview Sheet is dated August 20, 1999, and is signed by Plaintiff. The text reads,

> I (Tim Creed) went to Wal Mart on 8-6-99 (13) times and bought numerous items i.e.: soda, ice, tools, cigarettes and food. I did pass (5) checks of mine there. The next morning I found out my check book was stolen so I closed my account. When the checks were run threw (sic) the bank they came back on a closed account. I did not do this willfully.

(*Id.,* Ex. D.)

Defendant Wilson includes within the summary judgment record his "Incident/Investigation Report" dated August 16, 1999, and his "Supplementary

-4-

Investigation," dated August 20, 1999. In the incident report, the August 6 victim is identified as Walmart and four checks are listed. The "Modus Operandi" is identified as "known suspect passed check on closed account." In the supplementary investigation, a fifth check is identified. The supplementary report includes the notation that Detective Wilson "received [a fifth check] written by Tim Creed on 8-6-99 for $42.65 on a closed account. Warrant will be drawn in this case." (*Id.*, Ex. E.)

Defendant Wilson states that he made the decision to charge Plaintiff with multiple counts of obtaining property by false pretenses, felonies under state law. He states that Plaintiff did not deny that there were insufficient funds in his account when the checks were written. The returned checks were marked "CLOSED ACCOUNT." Defendant states that, based on his training and experience, he believed that Plaintiff's account of the events in question was not credible in important respects. He believed that Plaintiff knew that he did not have money in his account to cover the checks when he wrote them. Defendant states that "[t]he fact that plaintiff wrote multiple checks to Walmart (in part to obtain cash) on the same night, to me, revealed a pattern on plaintiff's part of fraudulent conduct." (Wilson Aff. ¶ 8.)

Detective Wilson states that he was not involved in the later decision to indict Plaintiff Creed as an habitual felon. That decision was made by the District Attorney of Moore County. Defendant states that he had no role in any changes made in the nature of the check charges after he initially charged and arrested Plaintiff. He was not involved in drawing the

-5-

indictments or superseding indictments. Detective Wilson believes the five charges were later dismissed against Plaintiff based upon the prosecutor's delay in bringing Plaintiff to trial, not on the basis of any determination of a lack of probable cause with regard to the charges.

Defendant states that he appeared before the Moore County grand jury when asked to do so by the District Attorney and testified truthfully to the best of his ability. Before the grand jury, he set forth the details of his investigation as described in his affidavit. Plaintiff was not present during the grand jury proceedings and, to the best of Defendant's knowledge, the testimony at the hearing was not transcribed.

Defendant further states that at some point in time, the Moore County District Attorney's Office obtained Plaintiff's bank records. Defendant states that he did not personally obtain the documents from the District Attorney until Plaintiff filed this civil litigation, although he knew they existed. According to Defendant, the bank records reveal that, as of May 1999, Plaintiff did not have money in his account to cover the checks written in August. Plaintiff had a negative balance in June and July of 1999. Bank statements were sent to Plaintiff's address prior to August 1999. Defendant states that while he did not have these documents when he sought warrants against Plaintiff, these documents would have been available to the District Attorney prior to the last time the Moore County grand jury issued the final indictments against Plaintiff.

According to documents produced in this action by the Moore County District Attorney's Office, Plaintiff was arrested by Defendant Wilson on five counts of obtaining property by false pretenses. The warrants were issued on August 17 and August 20, 1999 by a magistrate who found probable cause to support their issuance. The Moore County grand jury returned an indictment for the original charges on January 3, 2000. On April 3, 2000, an habitual felon indictment was returned against Plaintiff. On May 13, 2002 and September 15, 2003, superseding indictments were returned by the grand jury. (Docket No. 58, District Attorney's documents ["DA"] at 3-23.) Documents produced in discovery reveal that the District Attorney's office requested Plaintiff's bank records from BB&T in March and May 2002. Plaintiff consented to these requests. (DA at 57-69.)

Plaintiff Creed, in responding to Defendant's summary judgment showings, does not contest many of the facts recited above, but disagrees with certain factual assertions and adds others of his own. He states in his declaration that Defendant Wilson perjured himself in his affidavit in this case because he led the Court to believe that he did not decide whether to charge Plaintiff until after he interviewed Plaintiff on August 20, 1999, yet the first warrants against Plaintiff were obtained by Defendant Wilson on August 17. Plaintiff emphasizes that "Wilson obtained arrest warrants within 24 hours of receiving said checks from Walmart on 8-16-99." ((Docket No. 63, Pl.'s Declaration at 3.)

Plaintiff also questions the state of Detective Wilson's knowledge about Plaintiff's bank records at the time of the first superseding indictment in May 2002. Plaintiff asserts

that Wilson and the prosecutors should have known, when "they" obtained the superseding indictment in 2002, that Plaintiff did not act knowingly or with an intent to defraud when he wrote checks to Walmart on August 6, 1999. Plaintiff says it was clear by the time of the superseding indictment that the *bank* closed Plaintiff's account for insufficient funds, and Plaintiff did not do so himself. Plaintiff reasons that it is clear that before Defendant Wilson testified before the grand jury in May 2002, he knew that the bank had closed the account, not Plaintiff (despite Plaintiff's earlier interview statement to Wilson that Plaintiff closed the account because his check book had been stolen). Yet, it was alleged in the superseding indictment that Plaintiff "knowingly and with intent to defraud presented a check to said victim, knowing at the time that he intended to close said account to prevent payment." (Creed Aff. at 8.) Plaintiff asserts that Defendant Wilson must have perjured his testimony before the grand jury on May 13, 2002 on the issue of who closed the account and when it was closed. Plaintiff also points out that a memorandum from the prosecutor, dated April 23, 2002, advised Defendant Wilson that new indictments were being submitted to correct the nature of the false pretense, i.e., that the account was closed after the checks were presented.

Plaintiff, who proceeds *pro se*, focuses his legal claim on an asserted lack of probable cause with regard to the superseding indictments against Plaintiff in May 2002 and September 2003. He asserts that by the time of these indictments enough information was known to the District Attorney so that he could not have, in good faith, sought felony false pretense warrants against Plaintiff. By that time, according to Plaintiff, the District Attorney

knew that the bank, not Plaintiff, had closed the account prior to the time the checks were written. Plaintiff, in briefing to the Court, appears to concede that there was probable cause for his original arrest for false pretenses in August 1999 (Creed Aff. at 10), but contends that the evidence did not support such a charge by the time of the superseding indictments and Defendant must have known this and participated by giving false testimony to the grand jury.

In determining the merits of Defendant's summary judgment motion and the soundness of Plaintiff's opposition, the Court must first consider the nature of the legal claim made by Plaintiff Creed. In original pleadings which were rambling and disjointed, it appeared that the *pro se* Plaintiff may have intended to claim that Detective Wilson lacked probable cause to seek the original felony false-pretense warrants against Plaintiff in August 1999. Whether or not he intended such a claim, it is now abundantly clear from every factual showing in the record that Defendant in fact had probable cause to seek the felony warrants issued against Plaintiff at the outset of the prosecution. Plaintiff Creed had written five separate checks within a 24-hour period which were returned unpaid by the bank, marked as "CLOSED ACCOUNT." He had bought small items *and received cash back in all five transactions.* A reasonable inference of false pretense is obviously raised by these facts alone.

Moreover, under North Carolina law, the mere passing of a worthless check for value, *standing alone*, is grounds for a felony false pretense charge under N.C. Gen. Stat. § 14-100, without any further evidence of misrepresentation, fraud, notice, or knowledge. *See State*

-9-

Case 1:06-cv-00397-NCT-PTS   Document 65   Filed 01/29/09   Page 9 of 13

*v. Rogers*, 346 N.C. 262, 263 (1997); *State v. Cagle*, 182 N.C. App. 71, 75 (2007). In *State v. Rogers*, the Supreme Court of North Carolina wrote:

> The sole issue on appeal is whether the writing and passing of a worthless check in exchange for property, standing alone, is sufficient to uphold a conviction for obtaining property under false pretenses. We conclude that it is and reverse the decision of the Court of Appeals.

*Id.* at 263. In *State v. Cagle*, the Court of Appeals wrote:

> Defendant argues that merely writing a check that was subsequently dishonored does not meet the elements of the offense. However, our Supreme Court has explicitly stated that passing a worthless check in order to obtain property will suffice to uphold a conviction for obtaining property by false pretenses. *State v. Rogers*, 346 N.C. 262, 264, 485 S.E.2d 619, 621 (1997). The *Rogers* holding is controlling here. Defendant obtained property by writing worthless checks. Therefore, this assignment of error is totally devoid of merit and is overruled.

*Cagle*, 182 N.C. App. at 75.

The effect of North Carolina law upon Plaintiff's claims in this action is clear. Obviously, Plaintiff can state no claim for arrest without probable cause by Defendant Wilson. Detective Wilson had ample good cause for seeking Plaintiff's arrest in August 1999 for five counts of felony false pretenses. But the effect is even more far-reaching. Plaintiff claims that Defendant Wilson violated his rights in connection with the superseding indictments against Plaintiff Creed because by the time of those indictments Defendant must have known that the bank, not Plaintiff, had closed Plaintiff's account and that this occurred before, not after, Plaintiff wrote the checks. Under North Carolina law, however, Plaintiff's conduct supported the felony charges of the superseding indictments *even under all facts*

*now posited by Plaintiff.* Thus, no discrepancy alleged by Plaintiff can be relevant and material to the charges of the superseding indictments as a matter of law. There is in fact no record of what testimony Detective Wilson gave at the grand jury proceedings, but Plaintiff surmises that he must have committed perjury in order to obtain the superseding indictments. This assertion is both speculative and fallacious. A mere recitation by Detective Wilson of all facts in the case, set out exactly as Plaintiff now says they were and were known by Defendant to be, would nonetheless support a proper return of the superseding indictments against Plaintiff.

Plaintiff's claim of perjurious testimony fails for additional, fundamental reason. Absolute immunity from damage actions, including § 1983 actions, is extended by law to witnesses in judicial proceedings who take the stand at the instance of the prosecution. *See Burke v. Miller*, 580 F.2d 108 (4th Cir. 1978). Police officers are entitled to such absolute immunity even as are private citizens. *Briscoe v. LaHue*, 460 U.S. 325 (1983). Other enforcement proceedings, such as contempt or criminal prosecution, are available to deter perjury in judicial proceedings, but absolute immunity from civil liability is afforded under law in the interest of securing the full cooperation and testimony of witnesses. Thus, while there is *no* evidence before this Court to suggest that Defendant Wilson gave perjurious testimony, he would in any event be protected from this civil action by reason of absolute witness immunity. Plaintiffs claims against Defendant Wilson should be dismissed at this time.

-11-

Plaintiff has also filed a motion to compel the discovery of "work product" documents withheld from a production of documents made pursuant to the Court's Order of March 25, 2008. There, the Court directed prosecutors Greene and McSweeney to produce to Plaintiff the criminal litigation file (against Plaintiff) at issue in this litigation. The Court noted that the production would be "subject to Rule 34 procedure," and the Court's Order of March 25 did not "overrule" any proper Rule 34 objections that may be interposed by the Defendants. (Docket No. 43 at 10.) By Plaintiff's motion to compel, the Court is advised that the litigation file was turned over to Plaintiff, but some documents were withheld under assertion of "work product" protection.

Plaintiff contends that the withholding of documents as "work product" violated the Court's Order of March 25. That is plainly not so. The Court directed that the production was to be pursuant to Rule 34 and was subject to proper objections. "Work product" protection is a ground of objection that may properly be maintained under Rule 34. In this case, since Plaintiff's cause of action is defeated on the plain face of the summary judgment record and is legally deficient for the reasons set forth above, the Court has no reason to further consider Plaintiff's motion to compel discovery. The motion is **DENIED**.

## Conclusion

For reasons set forth above, **IT IS RECOMMENDED** that the summary judgment motion of Defendant Dan Wilson (Docket No. 56) be granted and that this action now be

-12-

dismissed. **IT IS ORDERED** that Plaintiff's motion for leave to amend (Docket No. 53) and Plaintiff's motion to compel discovery (Docket No. 49) are **DENIED**.


/s/ P. Trevor Sharp
United States Magistrate Judge

Date: January 29, 2009